UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WARREN MORRISON,

         Petitioner,

   v.

JARED LOZANO,[1]

        Respondent.

Case No.  20-cv-04239-EMC

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

## I.      INTRODUCTION

    Warren Morrison, a prisoner currently incarcerated at California Medical Facility in Vacaville, filed this *pro se* action for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an answer and Mr. Morrison has filed a traverse.  Mr. Morrison's petition is now before the Court for review on the merits.  For the reasons discussed below, the petition for writ of habeas corpus will be **DENIED**.

## II.      BACKGROUND

A.    The Crime

    The California Court of Appeal described the crime as follows:

> On October 25, 2015, Michelle Smith had been dating [Jarmal] Magee for about three months. She dropped him off in the 300 block of Wisteria in East Palo Alto and went to have dinner with a friend. Smith did not know whether Magee sold drugs, but suspected he did.

---

[1] Jared Lozano, the previous warden of California Medical Facility, where Mr. Morrison is incarcerated, was originally named as the respondent in this action.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Daniel Cueva, the current acting warden of California Medical Facility, is hereby SUBSTITUTED as Respondent in place of Mr. Morrison's prior custodian.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Magee phoned Smith later in the evening and she arrived after 9:00 p.m. to pick him up. She parked her car at 343 Wisteria and saw appellant, whom she knew, and Doug Burse, whom she had seen on Wisteria before. Magee walked over to Smith's car and told her that he and the other two men were arguing about where he was from and who had lived in the neighborhood longer. Magee walked across the street to pour himself a cup of cognac and returned to where the men were standing. After a couple of minutes, the argument escalated to yelling about who was from Verbena, a street around the corner.

As they argued, Smith saw appellant throw a punch at Magee, who fell on his back though the punch did not land. Appellant straddled Magee and stood over him. Burse kicked Magee as he lay on the ground. Appellant hit Magee's head as he attempted to hit back. Smith got out of her car and yelled stop.

According to Smith, appellant pulled out a gun from his waistband and fired two rounds at Magee. Magee, who had been hit, got up, and Smith started running toward them out of concern for Magee. Appellant pointed the gun at Smith and Magee pushed Smith down. Smith heard appellant fire two more shots. Magee told Smith to get in the car and as he said this, a bullet went by her head. Smith then heard three shots in quick succession. She started her car and Magee opened the passenger door, but did not get in. Smith drove a few feet, stopped and saw Magee lying on the sidewalk face down. Appellant was standing over him and fired two more shots at his back. Smith got out of the car and appellant ran away. Smith tried unsuccessfully to put Magee in her car and then called 911. She did not see Magee or Burse with a gun that night.

Magee died of multiple gunshot wounds. There were four total, including one independently fatal wound to the upper left back that transected the spinal cord, two wounds to the back which were very serious and likely to be independently fatal, and one to the groin that was not fatal. At the scene of the shooting, police recovered eight nine-millimeter cartridge casings and an expended nine-millimeter bullet. The eight cartridge casings were all fired from the same gun.

The gunshot detection and location system ShotSpotter was operational in the area. There were four activations of Shotspotter around 9:25 p.m. on October 25, with eight rounds fired over a period of 35 seconds.

. . .

After his arrest in this case, appellant's cell phone was searched. In November 2015, appellant visited websites covering news in East Palo Alto, publicizing wanted fugitives, discussing self-defense and reporting the homicide of Magee. The phone history also showed searches for getting away with murder, self-defense in California, crimes in East Palo Alto and appellant's name.

Appellant took the stand at trial. He testified that several people sold marijuana on Wisteria, and Burse, who lived there, was angry at

2

Magee for "short-stopping" people—stopping people from going on to the next person to buy marijuana from that person. A dispute devolved into Magee "talking smack" to appellant and Magee approaching Burse to argue with him about who had been in the area longer. Magee tried to take a swing at appellant and they started wrestling and fell to the ground. Burse tried to intervene at appellant's request.

Magee tried to pull a gun from his waist and he and appellant wrestled for control of it. The gun went off without hitting anyone and appellant and Magee continued to fight over the gun. The gun went off again and either the first or second shot hit Magee in the leg. Appellant ended up with the gun and started shooting. Magee fell to the ground on his stomach and appellant fired three shots, hitting Magee twice. Smith started screaming and appellant ran away. Appellant shot Magee because he was afraid and angry; he threw the gun away in a dumpster in Stockton, where he lived.

*People v. Morrison*, No. A152440, 2019 WL 1567554, at *1–2 (Cal. Ct. App. Apr. 11, 2019), *review denied* (June 26, 2019).

B.    Procedural History

On May 9, 2017, a jury found Mr. Morrison guilty of the first degree murder of Jarmal Magee with an enhancement for personally and intentionally discharging a firearm and causing great bodily injury (Cal. Penal Code Section §§ 187(a), 12022.53(d)).  CT 562-63.  The jury found Mr. Morrison not guilty of attempted murder of Ms. Smith.  CT 564.  The court sentenced Mr. Morrison to an aggregate term of fifty years to life in prison, twenty-five years to life for the underlying crime and twenty-five years to life for the enhancement.  CT 417-19, 568-70.  The trial court "later recalled the sentence based on the passage of Senate Bill 620, which amended section 12022.53 to give the court discretion to strike enhancements under that section," and imposed the same sentence.  *Morrison*, 2019 WL 1567554, at *2 n.2.  Mr. Morrison separately appealed the conviction and sentence on resentencing.  *Id.*  The California Court of Appeal remanded Mr. Morrison's case to give the trial court the opportunity to exercise its discretion not only to strike the firearm enhancement, but also to impose "an uncharged lesser firearm enhancement."  *People v. Morrison*, 34 Cal. App. 5th 217, 224 (2019).  On the same date, the California Court of Appeal affirmed the conviction.  *See Morrison*, 2019 WL 1567554.  The California Supreme Court summarily denied review.  Docket No. 11-22 at 37.

The trial court subsequently reimposed the original sentence again, which the California

United States District Court
Northern District of California

3

1    Court of Appeal affirmed after conducting an independent review of the record pursuant to *People*

2    *v. Wende*, 25 Cal. 3d 436 (1979).  *People v. Morrison*, No. A158705, 2020 WL 7350761, at *1

3    (Cal. Ct. App. Dec. 15, 2020).

4         Mr. Morrison then filed this federal habeas petition, to which he attached appellate

5    counsel's brief to the California Court of Appeal and petition for review to the California Supreme

6    Court. The petition for writ of habeas corpus in this action alleges that the trial court failed to

7    instruct the jury that provocation which reduces murder from first degree to second degree is

8    subjective rather than objective, violating Mr. Morrison's right to due process by relieving the

9    prosecution of its burden to prove an element of the crime and his Sixth Amendment right to

10   present a defense.  Pet., Docket No. 1 at 5-6, 47-48, 73.

### III.  JURISDICTION AND VENUE

12        This Court has subject matter jurisdiction over this action for a writ of habeas corpus under

13   28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the petition

14   concerns the conviction and sentence of a person convicted in San Mateo County, California,

15   which is within this judicial district.  28 U.S.C. §§ 84, 2241(d).

### IV.  STANDARD OF REVIEW

17        This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

18   custody pursuant to the judgment of a State court only on the ground that he is in custody in

19   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

20        The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254

21   to impose new restrictions on federal habeas review.  A petition may not be granted with respect to

22   any claim that was adjudicated on the merits in state court unless the state court's adjudication of

23   the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application

24   of, clearly established Federal law, as determined by the Supreme Court of the United States; or

25   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

26   the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

27        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

28   arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

United States District Court
Northern District of California

4

the state court decides a case differently than [the] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if

the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.  "A

federal habeas court making the 'unreasonable application' inquiry should ask whether the state

court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the

state court, if there is a reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

When confronted with an unexplained decision from the last state court to have been presented

with the issue, "the federal court should 'look through' the unexplained decision to the last related

state-court decision that does provide a relevant rationale.  It should then presume that the

unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192

(2018).

## V.     DISCUSSION

Mr. Morrison did not dispute at trial that he killed Mr. Magee; he only raised the defense

of provocation.  Pet., Docket No. 1 at 24.  He argues that the jury instructions, taken together,

misled the jury as to the type or degree of provocation required to reduce murder from first to

second degree.  *Id.* at 25.

The jury was instructed with CALCRIM Nos. 520, 521, 522, and 570.  CT 472-77.

CALCRIM 520 (First or Second Degree Murder with Malice Aforethought) explains that murder

requires malice aforethought, which can be express intent to kill someone or implied malice in the

form of intentionally committing an act with natural and probable consequences that are

United States District Court
Northern District of California

United States District Court
Northern District of California

1    dangerous to human life.[2]  CT 472.  CALCRIM 521 (First Degree Murder) explains that the

2    prosecutor must prove beyond a reasonable doubt that the murder was willful and deliberate, with

3    premeditation, in order to constitute first degree murder.[3]  CT 474.  This is as opposed to "a

_____

[2] The full text of CALCRIM 520 reads:

>          The defendant is charged in Count 1 with murder in violation
> of Penal Code section 187.
>          To prove that the defendant is guilty of this crime, the People
> must prove that:
> 1.  The defendant committed an act that caused the death of another
>     person;
> AND
> 2.  When the defendant acted, he had a state of mind called malice
>     aforethought;
> AND
> 3.  He killed without lawful excuse or justification.
>          There are two kinds of malice aforethought, express malice
> and implied malice. Proof of either is sufficient to establish the state
> of mind required for murder.
>          The defendant acted with express malice if he unlawfully
> intended to kill.
>          The defendant acted with implied malice if:
> 1.  He intentionally committed an act;
> 2.  The natural and probable consequences of the act were
>     dangerous to human life;
> 3.  At the time he acted he knew his act was dangerous to human
>     life;
> 4.  He deliberately acted with conscious disregard for human life.
>          Malice aforethought does not require hatred or ill will toward
> the Victim. It is a mental state that must be formed before the act
> that causes death is committed. It does not require deliberation or
> the passage of any particular period of time.
>          An act causes death if the death is the direct, natural, and
> probable consequence of the act and the death would not have
> happened without the act. A natural and probable consequence is
> one that a reasonable person would know is likely to happen if
> nothing unusual intervenes. In deciding whether a consequence is
> natural and probable, consider all of the circumstances established
> by the evidence.
>          If you decide that the defendant committed murder, it is
> murder of the second degree, unless the People have proved beyond
> a reasonable doubt that it is murder of the first degree as defined in
> CALCRIM No. 521.

CT 472-73.

[3] The full text of CALCRIM 521 reads:

>          The defendant is guilty of first degree murder if the People
> have proved that he acted willfully, deliberately, and with
> premeditation. The defendant acted willfully if he intended to kill.

1  decision to kill made rashly, impulsively, or without careful consideration," which lacks

2  deliberation and premeditation. *Id.*

3  CALCRIM 570 (Voluntary Manslaughter: Heat of Passion—Lesser Included Offense)

4  instructs that murder "is reduced to voluntary manslaughter if the defendant killed someone

5  because of a sudden quarrel or in the heat of passion," requiring that (1) the defendant was

6  provoked, (2) he "acted rashly and under the influence of intense emotion" clouding his judgment,

7  and (3) "The provocation would have caused a person of average disposition to act rashly and

8  without due deliberation, that is, from passion rather than from judgment."[4]  CT 475.  CALCRIM

United States District Court
Northern District of California

_____

The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the acts that caused death.

The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time.

The requirements for second degree murder based on express or implied malice are explained in CALCRIM No. 520, First or Second Degree Murder With Malice Aforethought.

The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder and the murder is second degree murder.

CT 474.

[4] The full text of CALCRIM 570 reads:

A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion.

The defendant killed someone because of a sudden quarrel or in the heat of passion if:

1. The defendant was provoked;
2. As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured (his/her) reasoning or judgment;

AND

5. The provocation would have caused a person of average

570 also instructs:

> It is not enough that the defendant simply was provoked. The defendant is not allowed to set up (his/her) own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient. In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment.

CT 475-76.

CALCRIM 522 (Provocation: Effect on Degree of Murder) instructs, in full part:

> Provocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter. The weight and significance of the provocation if any, are for you to decide. If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. Also, consider the provocation in deciding whether the defendant committed murder or manslaughter.

CT 477. Trial counsel did not object to any of these instructions, or request modifications or additional instructions. See CT 347; RT 908-09.

---

> disposition to act rashly and without due deliberation, that is, from passion rather than from judgment.
>    Heat of passion does not require anger, rage, or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.
>    In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it. While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or long period of time.
>    It is not enough that the defendant simply was provoked. The defendant is not allowed to set up (his/her) own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient. In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment.
>    If enough time passed between the provocation and the killing for a person of average disposition to "cool off" and regain his or her clear reasoning and judgment, then the killing is not reduced to voluntary manslaughter on this basis.
>    The People have the burden of proving beyond a reasonable doubt that the defendant did not kill as a result of a sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of murder.

CT 475-476.

United States District Court
Northern District of California

As demonstrated by the jury instructions, there are two ways in which provocation can come into play in a California case involving murder or manslaughter: to negate the malice required for any degree of murder, or to negate the deliberation and premeditation required for first degree murder specifically.  Malice can only be negated by a provocation that would meet an objective standard and incite passion in an "ordinarily reasonable person under the given facts and circumstances."  *People v. Logan*, 175 Cal. 45, 49 (1917).  The deliberation and premeditation required for a first degree murder conviction under California law can be negated, in contrast, by evidence of a provocation that is purely subjective in nature, and applicable only to the defendant. *See, e.g., People v. Padilla*, 103 Cal. App. 4th 675, 677 (2002) (defendant's hallucination "inadmissible to negate malice so as to mitigate murder to voluntary manslaughter but . . . admissible to negate deliberation and premeditation so as to reduce first degree murder to second degree murder").  The "test" to reduce first degree murder to second degree murder is "subjective."  *Id.* at 679.

Mr. Morrison asserts that, because the jury was instructed that the test for provocation in the manslaughter context is objective, and did not receive any explicit instruction that the test for second degree murder provocation is subjective, the jury would have assumed that objective provocation was required to reduce murder from first to second degree.  *See* Pet., Docket No. 1 at 25-26, 74-75.  This failure, he claims, in addition to being error under state law,[5] "relieve[d] the prosecution of its burden to prove premeditation and deliberation beyond a reasonable doubt," and prevented him from presenting a complete defense, in violation of the Sixth and Fourteenth Amendments.  *Id.* at 47-48.

The California Court of Appeal rejected Mr. Morrison's claim, finding both that it was forfeited by the failure to object at trial[6] and that it failed on the merits.  The court noted that

---

[5] Mr. Morrison's challenge to the jury instructions as erroneous under state law does not state a claim cognizable in federal habeas corpus proceedings, *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); the Court addresses only his federal constitutional claims.

[6] Under California law, a defendant must request a pinpoint instruction—which "relate[s] particular facts to a legal issue in the case or 'pinpoint[s]' the crux of a defendant's case, such as mistaken identification or alibi," *People v. Saille*, 54 Cal. 3d 1103, 1119 (1991)—in order to raise the issue on appeal.  The trial courts are not required to give such instructions *sua sponte*.  *Id.*

9

CALCRIM 522 had previously been found "to adequately explain provocation as a factor affecting the degree of murder." *Morrison*, 2019 WL 1567554, at *3 (citing *People v. Mayfield*, 14 Cal. 4th 668, 767 (1997), *as modified on denial of reh'g* (Mar. 19, 1997), *overruled on other grounds by People v. Scott*, 61 Cal. 4th 363, 349 P.3d 1028 (2015)).  The court explained:

> Here, there is no reasonable likelihood the jury thought that the provocation which determines whether a murder is of the first or second degree is the same as the provocation required to negate malice and reduce a homicide to voluntary manslaughter. CALCRIM No. 570, pertaining solely to voluntary manslaughter, properly specifies provocation in that context must be objectively reasonable, in other words, that "a person of average disposition" would have been provoked "in the same situation and knowing the same facts." Read with CALCRIM No. 522, which does not contain any such requirements for provocation reducing a killing to second degree murder, the only reasonable conclusion to be reached is that the provocation precluding a finding of premeditation is something different from (and less than) that which would preclude a finding of malice. That is, the jury necessarily understood that if some provocation exists, the killing must be second degree murder unless it finds the provocation was objectively reasonable under the circumstances. Otherwise, there would be no need to separately instruct the jury to consider provocation in the context of second degree murder as distinct from the provocation that will reduce a killing to voluntary manslaughter. Considering the instructions as a whole, a reasonable juror would have understood that something less than objectively reasonable provocation could preclude a finding of premeditation and justify a verdict of second degree murder.

*Morrison*, 2019 WL 1567554, at *4.

The California Court of Appeal further disagreed with appellate counsel's attempts to differentiate *Mayfield*, *People v. Jones*, 223 Cal. App. 4th 995, 1000 (2014), and *People v. Hernandez*, 183 Cal. App. 4th 1327, 1333 (2010).  *Morrison*, 2019 WL 1567554 at *4-5.  In *Mayfield*, the California Supreme Court held that the trial court "was under no duty to clarify or amplify" the precursor to CALCRIM 522, which constituted a "pinpoint instruction," "absent a request."  *Id.* at *4 (quoting *Mayfield*, 14 Cal. 4th at 778).  The California Court of Appeal described *Jones* as upholding the same instructions provided at Mr. Morrison's trial, and found that "the defendant was seeking a pinpoint instruction to the extent he was arguing they should be more specific."  *Id.*  The *Jones* court found the argument forfeited because defense counsel had not requested a pinpoint instruction at trial.  *Jones*, 223 Cal. App. 4th at 1001.  Here, the California

10

1  Court of Appeal noted that, like in *Jones*, the prosecutor in Mr. Morrison's case had not "argued

2  an objective test applied to reduce murder from first to second degree." *Morrison*, 2019 WL

3  1567554, at *4.

4       As noted by the Court of Appeal in Mr. Morrison's case, *Hernandez* rejected a claim that

5  CALCRIM 522 was inadequate because it did not specifically link provocation to deliberation and

6  premeditation. *Id.* at *5.  "The [Court of Appeal] concluded the jury would have understood from

7  CALCRIM No. 522 as well as CALCRIM No. 521 defining first degree murder (also given [in

8  Mr. Morrison's trial]) 'that provocation (the arousal of emotions) can give rise to a rash, impulsive

9  decision, and this in turn shows no premeditation and deliberation.'" *Id.* (quoting *Hernandez*, 183

10  Cal. App. 4th at 1334).  In addition, although the jury in *Hernandez* had not been instructed with

11  the objective standard at all, whereas Mr. Morrison argued that the jury in his case had been

12  impacted by hearing the objective standard in the manslaughter context, the California Court of

13  Appeal found that the instructions were not misleading because the objective standard instruction

14  did not "preclude the defense from arguing that [subjective] provocation played a role in

15  preventing the defendant from premeditating and deliberating." *Id.* (quoting *People v. Rogers*, 39

16  Cal. 4th 826, 880 (2006)).

17       As the last reasoned decision from a state court, the California Court of Appeal's decision

18  is the decision to which § 2254(d) is applied.  *See Wilson*, 138 S. Ct. at 1192.  Mr. Morrison is

19  entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an

20  unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was

21  based on an unreasonable determination of the facts in light of the evidence presented.  Without

22  reaching the question of forfeiture, the California Court of Appeal's conclusion regarding the

23  merits was neither contrary to, nor an unreasonable application of, federal law.

24  A.   Jury Instructions

25       To obtain federal habeas relief for an error in the jury instructions, a petitioner must show

26  that the error "so infected the entire trial that the resulting conviction violates due process."

27  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  A jury instruction violates due process if it fails to

28  give effect to the requirement that "the State must prove every element of the offense." *Middleton*

11

1    *v. McNeil*, 541 U.S. 433, 437 (2004).  "[A] single instruction to a jury may not be judged in

2    artificial isolation, but must be viewed in the context of the overall charge."  *Id.* (quoting *Boyde v.*

3    *California*, 494 U.S. 370, 378 (1990)).  "Even if there is some 'ambiguity, inconsistency, or

4    deficiency' in the instruction, such an error does not necessarily constitute a due process

5    violation."  *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Middleton*, 541 U.S. at

6    437).

7            Where a potentially defective instruction is at issue, the court must inquire whether there is

8    a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the

9    Constitution.  *Estelle*, 502 U.S at 72 & n.4; *Boyde*, 494 U.S. at 380.  Even if there is a

10   constitutional error in the instructions, habeas relief is not available unless the error had a

11   substantial and injurious effect or influence in determining the jury's verdict.  *Calderon v.*

12   *Coleman*, 525 U.S. 141, 146-47 (1998); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

13           The California Court of Appeal did not explicitly address Mr. Morrison's federal

14   constitutional claim that the jury instructions in totality operated to relieve the prosecution of the

15   burden of proof of premeditation and deliberation.[7]  "When a federal claim has been presented to a

16   state court and the state court has denied relief, it may be presumed that the state court adjudicated

17   the claim on the merits in the absence of any indication or state-law procedural principles to the

18   contrary."  *Harrington v. Richter*, 562 U.S. 86, 99 (2011); *see also Johnson v. Williams*, 568 U.S.

19   289, 300-301 (2013) (when a state court rejects a federal claim without expressly addressing it,

20

21   _____

22   [7] Respondent argues that Mr. Morrison "does not attempt to raise, and has not exhausted, a claim
     of instructional error amounting a [sic] violation of due process under the test of *Estelle v.*
     *McGuire*."  Ans., Docket No. 10-1 at 21.  Respondent is wrong.  In order to exhaust a federal
     habeas claim in state court, a petitioner "must include reference to a specific federal constitutional
     guarantee, as well as a statement of the facts that entitle the petitioner to relief."  *Gray v.*
23   *Netherland*, 518 U.S. 152, 162–63 (1996).  Mr. Morrison's appellate counsel clearly stated a
     federal constitutional claim that the instructions "relieve[d] the prosecution of its burden to prove
24   malice beyond a reasonable doubt," and explained all the facts underlying the claim.  Pet., Docket
     No. 1 at 47, *see id*. at 24-31 (facts).  He also cited a state case holding that the "failure to instruct
25   on provocation . . . is an error of federal constitutional dimension that denies the defendant due
     process because it relieves the prosecution of the burden to prove malice beyond a reasonable
26   doubt," and argued by "parity of reasoning" that the same applied to second degree murder
     provocation.  *Id.* at 47; *People v. Thomas*, 218 Cal. App. 4th 630, 642 (2013), *as modified on*
27   *denial of reh'g* (Aug. 22, 2013).  Mr. Morrison fairly presented the *Estelle v. McGuire* claim that
     the instructions violated a constitutional right, by altering the burden of proof, to the state courts.
28   He was not required to explicitly cite *Estelle* in order to present and exhaust the claim.

United States District Court
Northern District of California

1    federal habeas courts must presume the federal claim was adjudicated on the merits and review it

2    deferentially).

3           Because the state court denied the federal constitutional claim on the merits without

4    explanation, this Court "must determine what arguments or theories supported or . . . could have

5    supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists

6    could disagree that those arguments or theories are inconsistent with the holding in a prior

7    decision of [the U.S. Supreme] Court." *Harrington*, 562 U.S. at 102.  Mr. Morrison is entitled to

8    habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable

9    application of, clearly established federal law from the U.S. Supreme Court, or was based on an

10   unreasonable determination of the facts in light of the evidence presented.

11          The California Court of Appeal's decision here was not contrary to or an unreasonable

12   application of clearly established federal law.  Its rationale that there was no reasonable likelihood

13   that the jury believed that the prosecution was relieved of the burden of proving premeditation and

14   deliberation beyond a reasonable doubt was sound.  CALCRIM 520 and 521 clearly establish that

15   the prosecutor has the burden of proving premeditation and deliberation, and that those elements

16   are absent where there is a rash or impulsive decision to kill.  CALCRIM 521 and 522 refer to the

17   defendant's actual mental state, suggesting that subjective rather than objective provocation

18   negates those elements.  CALCRIM 521 instructs the jury to consider whether the defendant

19   weighed considerations and made a cold decision, or made a rash decision, with emphasis on the

20   extent of the defendant's reflection.  CALCRIM 522 directs the jury to consider whether the

21   defendant *was provoked*, not whether an average person would have been provoked.  CALCRIM

22   570, which expressly addresses voluntary manslaughter, in contrast, explicitly requires that, to

23   reduce murder to manslaughter, the provocation must have been reasonable.  As the California

24   Court of Appeal noted, the fact that CALCRIM 521 and 522 (which address first and second

25   degree murder) did not require objective provocation, while CALCRIM 570 (which addresses

26   voluntary manslaughter) did so require, would have accurately led the jury to believe that

27   objective provocation was not required for second degree murder.

28          In addition, as the California Court of Appeal noted, the prosecutor did not argue that

United States District Court
Northern District of California

13

provocation to reduce first degree to second degree murder has to be objective. *See Morrison*, 2019 WL 1567554, at *4. The prosecutor only discussed objective provocation in the section of her closing argument that clearly addressed voluntary manslaughter and the absence of malice. RT 958-961. In discussing premeditation and deliberation, she analogized premeditation to a driver checking the rearview and sideview mirrors before changing lanes. RT 952-53. She also gave an example of a person at a firing range intentionally killing someone standing near the target, which constitute second degree murder, which would be elevated to first degree if the person then decides to finish he job and pulls the trigger again. RT 953. She repeated Mr. Morrison's response when she asked him on cross-examination if he wanted to punish Mr. Magee,[8] and argued "[p]unishment is not provocation. Punishment is a motive to kill." RT 964. None of the prosecutor's discussion of premeditation and deliberation, or of objective provocation, suggested that subjective provocation could not negate premeditation or deliberation.

The California Court of Appeal reasonably determined that the failure to provide an instruction on subjective provocation did not relieve the prosecution of the burden of proof as to premeditation and deliberation, and there was no federal constitutional error.

Further, even if there was constitutional error, it was harmless.[9] A jury instruction that omits an element of an offense is constitutional error subject to "harmless error" analysis.

---

[8] On cross-examination, Mr. Morrison testified:

> I wasn't thinking about running. I was thinking about—I was angry.
> I mean, somebody just tried to shoot me or possibly kill me. So I
> didn't think about running, taking the gun and running, like.
> Q: Well, you thought about punishing him, though; right?
> A: Yes
> Q: And is that what you wanted to do when you fired those—after
> the first two shots, when you fired those next three shots, was that to
> punish him for having a gun?
> A: Not for having a gun. For pulling the gun on me and trying to
> shoot me.

RT 857.

[9] The California Court of Appeal did not make a harmlessness determination, because it found no error. This Court therefore applies the harmless error standard from *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) *de novo* and asks whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *See Fry v. Pliler*, 551 U.S. 112, 116, 120 (2007); *c.f. Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015).

14

1    *Evanchyk v. Stewart*, 340 F.3d 933, 940 (9th Cir. 2003).  An omission or misdescription of an

2    element of an offense will be found harmless unless it "'had substantial and injurious effect or

3    influence in determining the jury's verdict.'"  *California v. Roy*, 519 U.S. 2, 4-5 (1996) (quoting

4    *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

5           Mr. Morrison's testimony strongly suggested that he had premeditation and deliberation at

6    some point during what the prosecutor's Shotspotter expert testified was eight gunshots over the

7    course of 33 seconds captured on audio, RT 250.   Accepting Mr. Morrison's version of events,[10]

8    he testified that, after he got the gun from Mr. Magee in the tussle, he shot Mr. Magee while he

9    was running away, from about 16 or 17 feet, and then, after Mr. Magee had fallen to the ground,

10   he approached him and shot him several more times from three or four feet away.  *See* RT 833-34,

11   846-47.  He also testified that after the tussle on the ground ended, he specifically waited for Mr.

12   Magee to pass by where Ms. Smith was before he started shooting:

13              I just started shooting after he pass—I didn't want to start shooting
                while he was by her because I didn't want to hurt her, nor did I want
14              to hurt him at the time.  I just didn't want her in between what was
                going on between us.  So I waited until he passed her and got to the
15

16   _____

17   [10] Mr. Morrison was not a highly credible witness, making any error even more harmless.  The
     prosecutor asked Mr. Morrison to read into the record a letter he wrote to Doug Burse in which
     Mr. Morrison appeared to ask Mr. Burse to "come to court" and testify as to a specific series of
18   events:

19              "Tell Doug that I need him to come to court for me.  It can help me.
                Tell him he did not"—"he didn't do shit so he don't have to trip off
20              nothing.  I got this.  Doug, tell them that it was you that was tripping
                off Maal for short-stopping, not me, and that I tried to stop the
21              whole thing.  Maal started talking shit to me for no reason.  Maal
                tried to hit you, but I stepped [in] and between y'all.  Doing so, I got
22              hit.  That's how the fight began.  During the fight, we all fell to the
                ground.  Next thing you know is you see Maal trying to pull a gun
23              out.  You see him—You see me try to grab for . . . [sic] him.  In the
                process, the gun goes off.  I get it [sic] and start shooting.  Period!!"
24              And then I said: "All"—referring to myself.  "All Warren did was
                defend & fight for his life.  End of statement."
25              . . .

26   RT 872-73.  The prosecutor questioned him about the letter, and he acknowledged
     that he did not actually get hit, but "almost got hit" in the tussle.  RT 875.  The
27   letter and Mr. Morrison's own acknowledgment of its inconsistency with his trial
     testimony cast his narrative in doubt.  He also testified that he was the victim in the
28   situation.  RT 868.  And his testimony about the shooting was inconsistent with the
     audio recording.  RT 860-861.

end of this white fence, and I just started shooting.

RT 798.  He continued:

> [A]s I was shooting, he falls to the ground on his stomach.  And at that time, I didn't know that I had shot him.  It just looked like he fell, like he tripped.  But, so I walked up as he was laying down or on the ground and—
> Q: And did you shoot him again?
> A: Yes.  I shot him two times while he was laying down.

RT 799.  And he agreed with the prosecutor that he intended to punish Mr. Magee for pulling a gun on him.  *See supra* at 13-14 n.8.  His thought process was deliberate and calculated enough for him to wait for Mr. Magee to pass by Ms. Smith, and for him to have an intent to punish Mr. Magee.  It is highly unlikely that the jury would have found, in light of Mr. Morrison's testimony about the extent of his thought process and reflection during the shooting, as well as the fact that he approached Mr. Magee after he had fallen down and shot him two more times, that he was subjectively provoked in a manner that negated premeditation and deliberation.  The jury would likely have convicted Mr. Magee of first degree murder even if it had been instructed that provocation to reduce first to second degree murder can be subjective.[11]

B.    The Right to Present a Defense

Mr. Morrison also claims that the instructions prevented him from presenting a complete defense.  Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth or Fourteenth Amendment guarantee of due process, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683 690 (1986)); *see California v. Trombetta*, 467 U.S. 479, 485 (1984) (due process); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) (compulsory process).

There is no clearly established federal law linking the right to present a defense to allegedly erroneous jury instructions.  *See Gilmore v. Taylor*, 508 U.S. 333, 343-44 (1993) (meaningful opportunity to present a complete defense invoked by Supreme Court in cases

---

[11] Nor do the juror notes—which discussed the special allegation form and requested reading some of the cross-examination of Mr. Morrison—suggest any confusion about provocation.  CT 553-561.

United States District Court
Northern District of California

1   involving "the exclusion of evidence" and "the testimony of defense witnesses"; applying this

2   principle to "confusing instructions on state law which prevent a jury from considering an

3   affirmative defense" would "make a nullity of the rule reaffirmed in *Estelle v. McGuire*").

4          Further, even if such law existed, it was not violated during Mr. Morrison's trial.  He was

5   permitted to present the defense of subjective provocation, and did so numerous times.  His

6   testimony addressed his emotional and mental state and the amount of time he had for reflection.

7   He testified that he started shooting "[b]ecause I was scared from the initial shot.  I was just scared

8   at the time."  RT 798.  He stated: "It actually happened, like, really fast.  The fight happened, the

9   tussle over the gun, the two shots went off.  He gets up and—the time—when I get up, the next

10  time I see him is, he's right here, and that's when I just started shooting."  *Id.*  He testified that he

11  shot Mr. Magee the last time because he was scared and angry because they were friends, although

12  not close friends, and he "didn't think that [Mr. Magee] would try to do anything like this."  RT

13  800.  He "didn't think at all."  *Id.*  Elaborating on cross-examination, Mr. Morrison said he was

14  angry because "Jarmal is like an older cousin to me and he watched me grow up.  So I didn't—I

15  wouldn't never thought he was trying to pull a gun out on me and try to kill me."  RT 859.  He

16  testified that fear was a bigger emotion for him at that time than anger, and that he remained afraid

17  even after Mr. Magee was running away.  RT 859-60.

18         Defense counsel focused exclusively during his closing argument on objective provocation

19  to reduce murder to voluntary manslaughter, and did not explicitly discuss second degree murder.

20  RT 997-1001.  But nothing prevented defense counsel from arguing that the murder was second

21  degree.  And although his focus was on provocation meeting the voluntary manslaughter standard,

22  he clearly presented the defense that Mr. Morrison was subjectively provoked.  *See* RT 998-999.

23  The jury instructions did not prevent the jury from considering Mr. Morrison's arguments at trial

24  that the murder was not premeditated or deliberate.  The jury was affirmatively instructed that

25  provocation could negate premeditation and deliberation.  That defense counsel did not choose to

26  emphasize that Mr. Morrison's subjective provocation alone was adequate for second degree

27  murder does not mean the trial court committed constitutional error in preventing Mr. Morrison

28  from presenting a defense.

United States District Court
Northern District of California

1     The California Court of Appeal reasonably determined that the failure to provide an

2  instruction on subjective provocation did not prevent Mr. Morrison from presenting a complete

3  defense, and there was no federal constitutional error.

4        1.    No Certificate Of Appealability

5     A certificate of appealability will not issue because "reasonable jurists would" not "find

6  the district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

7  *McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a certificate of appealability is denied.

8                **VI.**      **CONCLUSION**

9     For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**.

10     The Clerk shall enter judgment in favor of Respondent and close the file.

11     Additionally, the Clerk is directed to substitute Daniel Cueva on the docket as the

12  respondent in this action.

13

14     **IT IS SO ORDERED**.

15

16  Dated: October 13, 2021

17

18                                 _____

19                                   EDWARD M. CHEN
                                   United States District Judge

20

21

22

23

24

25

26

27

28